**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.:

| | |
|---|---|
| LAURINUS PIERRE | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE CITY OF MIRAMAR, FLORIDA, INC., | ) |
| a Florida Municipal Corporation; GEORGE | ) |
| SCHMIDT (435) and J.L. SAFIY-STEWART | ) |
| (390), individually and in their official capacities | ) |
| as police officers for the City of Miramar; KEITH | ) |
| F. DUNN, in his official capacity as the Chief of | ) |
| Police for the City of Miramar Police Department; | ) |
| AL LAMBERTI, in his official capacity as the | ) |
| Sheriff of Broward County; ANGELA MCNEAL | ) |
| individually and in her official capacity  as a | ) |
| deputy sheriff – Corrections for the Broward | ) |
| County Sheriff's Office | ) |
| | ) |
| Defendants. | ) |

## **COMPLAINT**

PLAINTIFFS, LAURINUS PIERRE, M.D., M.P.H. ("DR. PIERRE") hereby sues

Defendants, jointly and severally, and alleges:

1.      This is an action for damages for the false arrest, false imprisonment, unlawful

search and seizure and malicious prosecution of an innocent man in violation of the Fourth and

Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983, 1988, and Florida

state law.

## JURISDICTION AND VENUE

2.     This is an action for damages in excess of $15,000.00, arising out of one or more violations of federal and Florida laws, detailed below.

3.     This action is brought pursuant to 42 U.S.C. §§ 1983, 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.  Jurisdiction is founded on 28 U.S.C. § 1331, 1343, 42 U.S.C. § 1988, the constitutional provisions mentioned above, and under the tort law of Florida.

4.     In connection with the acts, practices and violations alleged below, the Defendants have each, either directly or indirectly, violated the Plaintiffs' constitutional rights.

5.     Venue is proper because the arrest from which this cause of action arises occurred in Broward County, Florida, and the parties either resided or were located within Broward County, Florida at the time of the incident.

6.     All conditions precedent under Florida Law for the filing of this lawsuit have been satisfied. (EXHIBIT 1).

7.     Plaintiff seeks an award of general and special damages for permanent physical, mental and emotional injuries, loss of earning capacity, loss of enjoyment of life, punitive damages, court costs and attorney fees.

## PARTIES

8.     Plaintiff DR. PIERRE is sui juris and was at all times material hereto an adult resident of Broward County, Florida.

9.     Defendant, CITY OF MIRAMAR, FLORIDA, INC. is a municipal corporation located in Broward County, Florida and is responsible, through its officers, employees, servants,

and agents, for enforcing the regulations of the Defendant CITY OF MIRAMAR and for ensuring that its officers, employees, servants, and agents obey the laws of the State of Florida and the United States.

10.     Defendant SCHMIDT, at all times material to this complaint, was a duly appointed police officer with the City of Miramar Police Department, acting under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or Broward County.  Defendant SCHMIDT is being sued in his individual and official capacities.

11.     Defendant SAFIY-STEWART, at all times material to this complaint, was a duly appointed police officer with the City of Miramar Police Department, acting under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or Broward County.  Defendant SAFIY-STEWART is being sued in her individual and official capacities.

12.     Defendant DUNN is the Chief of Police for the City of Miramar Police Department.  Said Defendant is responsible, as Police Chief, for the conduct of the deputies in his employ and for ensuring that his deputies, employees, servants and agents obey the laws of the State of Florida and the United States.  Defendant DUNN is being sued in his official capacity.

13.     Defendant LAMBERTI is the Sheriff of Broward County. Said Defendant is responsible, as Sheriff, for the conduct of the deputies in his employ and for ensuring that his deputies, employees, servants and agents obey the laws of the State of Florida and the United States. Defendant LAMBERTI is being sued in his official capacity.

14.     Defendant MCNEAL, at all times material to this complaint, was a duly appointed corrections officer with the Broward County Sheriff's Office, acting under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or Broward County.  Defendant MCNEAL is being sued in her individual and official capacities.

15.     Defendants SCHMIDT AND SAFIY-STEWART violated DR. PIERRE'S constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution. It is further alleged that these violations were committed as a result of the deliberate indifference, and the policies and customs, of Defendants CITY OF MIRAMAR and DUNN.

16.     Defendant MCNEAL violated DR. PIERRE'S constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution. It is further alleged that these violations were committed as a result of the deliberate indifference, and the policies and customs, of Defendant LAMBERTI.

17.     City of Miramar Police Department and Broward County Sheriff's Office and their respective officers are "persons" for purposes of 42 U.S.C. Section 1983.

18.     At all times relevant to this cause, the Defendants were acting under color of State law and color of their authority as public officials and public employees.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

19.     On the night of April 3, 2011, DR. PIERRE was at his home located at 7736 Embassy Boulevard, Miramar, Florida 33023 with his wife, two (2) minor daughters and other family members and friends when he heard banging on his front door.

20.     A prior victim of burglary, DR. PIERRE feared that someone was attempting to break into his home.  He grabbed a baseball bat and his shotgun and secured his property from inside.  He then exited his home and, while remaining on his property, inspected his yard where the noise had been heard. He was outside for fewer than 4 minutes before he went inside, re-deposited the shotgun into its safety case and rejoined his family and guests.

21.     Approximately 30 to 40 minutes later, Defendants SCHMIDT, SAFIY-STEWART, and a half dozen or so other officers of the Miramar Police Department, acting within the course and scope of their employment in an overwhelming show of force, surrounded DR. PIERRE'S home with rifles and guns drawn.

22.     Defendants ordered DR. PIERRE to come out of his home with his hands in the air.  He complied as did the other male persons in his home, including his brother, Sergeant Fedy Pierre, a law enforcement officer with the Newark, New Jersey police department.

23.     The Defendants shined a bright floodlight directly in DR. PIERRE'S face and pointed guns at him from every direction.  Law enforcement officers, perched in all directions, barked orders at DR. PIERRE, and DR. PIERRE (and the other male persons from his home) were then patted down and searched by law enforcement.

24.     SCHMIDT then asked DR. PIERRE if he owned a gun and where it was. Without DR. PIERRE'S consent, SCHMIDT ordered a fellow officer to search the home of DR. PIERRE. Said officer then opened the front door of DR. PIERRE'S home, entered the house and went into a bedroom where his wife and two minor daughters were, and seized the shotgun which was unloaded and in its safety case.

25. DR. PIERRE and Sergeant Fedy Pierre, who identified himself as a sergeant with the Newark, New Jersey Police Department, tried to explain that DR. PIERRE went outside to inspect his property due to a perceived burglary and offered surveillance video from DR. PIERRE'S home security cameras as evidence that no law had been broken.

26. However, Defendants SCHMIDT and SAFIY-STEWART would not take Sergeant Pierre's statement nor investigate the incident. They declined to view the surveillance video and refused a request by Sergeant Pierre to speak with a supervisor.

27. They instead summarily arrested DR. PIERRE without reading him his Miranda rights. SCHMIDT handcuffed DR. PIERRE and left him in the backseat of the patrol car parked in an alley.

28. To support the illegal arrest, Defendant SAFIY-STEWART secured an affidavit from MCNEAL. MCNEAL is not a law enforcement officer responsible for investigating crime. Rather, she is a corrections officer who was off duty at the time of the incident and who did not personally witness the incident.

29. SCHMIDT prepared an Incident/Investigation Report indicating that he made contact with MCNEAL upon arrival at the scene and that she had witnessed the incident and was "an off duty BSO Deputy." While transporting DR. PIERRE to jail, Defendant SCHMIDT, knowing that the arrest was not supported by probable cause, falsely claimed that DR. PIERRE had been seen carrying the gun off his property by a "BSO deputy" and assured him that the arrest "was nothing" since DR. PIERRE had "no prior record [you can] simply take a plea and do community service."

30.     In her sworn statement, MCNEAL did not identify herself as a Broward County deputy detention officer. Instead, she appeared to give her statement as a lay witness, making no reference to her employment.

31.     MCNEAL gave false testimony under oath in order to knowingly frame DR. PIERRE, an innocent man, for a crime.

32.     Specifically, MCNEAL falsely stated in her affidavit that she was present when DR. PIERRE emerged from his home to inspect his property and that he was bald and shirtless. MCNEAL further stated that she witnessed DR. PIERRE "walking up and down the road with the shotgun in his hand."  MCNEAL became more specific with her fabricated story claiming that DR. PIERRE walked past the house next door where she was visiting and continued eastbound.  She went on to say that DR. PIERRE was holding the shotgun in a way "like, you know, if anything happened, he . . . it could easily be put to use, you know, just the way he was holding it. . ."

33.     Unbeknownst to MCNEAL, DR. PIERRE'S property was being monitored by video surveillance cameras which had captured the entire incident and which proved that DR. PIERRE was in lawful possession of his shotgun on his premises and held the shotgun downward, as permitted by law, and not in a rude, careless, angry or threatening manner.

34.     The video surveillance footage also proves that MCNEAL was not present when DR. PIERRE exited his house. DR. PIERRE was neither bald nor shirtless. Therefore MCNEAL'S description of him did not comport with the facts. MCNEAL fabricated the affidavit in an attempt to give law enforcement probable cause for the arrest and to further her own career.

35.     MCNEAL has a criminal record for theft, a crime involving dishonesty. MCNEAL and a Sears employee conspired to steal merchandise from a Sears department store. As part of the scheme, MCNEAL took merchandise to the clerk's register. The clerk pretended to charge MCNEAL the full value of the items but instead placed some of the items in MCNEAL'S bag without charging MCNEAL for them.  MCNEAL was arrested for theft and was given probation.

36.     As a result of MCNEAL'S false affidavit and SCHMIDT and SAFIY-STEWART'S refusal to investigate the incident or consider exculpatory evidence available to them before the arrest was made, DR. PIERRE was arrested and charged with Reckless Display of Weapon in violation of Florida Statute 790.10 and Open Carrying of Weapon in violation of Florida Statute 790.053, both misdemeanors.

37.     Defendants arrested DR. PIERRE without probable cause *as a matter of fact* because DR. PIERRE was responding to an apparent break-in in self-defense and in defense of his wife, two (2) minor daughters and his home.

38.     Defendants arrested DR. PIERRE without probable cause *as a matter of law* in that a misdemeanor may be charged only if the crime was committed in the presence of law enforcement. DR. PIERRE did not possess a weapon in the officers' presence nor did he commit a crime in the officers' presence.

39.     Defendants   SCHMIDT   and   SAFIY-STEWART   intentionally   and/or incompetently failed to investigate or consider other evidence which would have negated the fabricated evidence created by Defendant MCNEAL.  Defendants SCHMIDT and SAFIY-STEWART failed to include the statement of Officer Fedy Pierre in the incident report.

40. Defendants DUNN and CITY OF MIRAMAR failed to train or supervise their officers, including SCHMIDT and SAFIY-STEWART, regarding proper investigative techniques to employ at the scene of a purported crime.

41. Defendants DUNN and CITY OF MIRAMAR failed to implement or enforce policies and procedures regarding proper investigative techniques and procedures to undertake prior to making an arrest.

42. Federal and state law, as well as accepted police practices at the time of DR. PIERRE'S arrest provided "fair warning" to Defendants SCHMIDT, SAFIY-STEWART and MCNEAL that their conduct was improper, incompetent, illegal and in violation of the DR. PIERRE'S constitutional rights.

43. It was only as a result of the intentional misconduct and/or incompetence of Defendants SCHMIDT, SAFIY-STEWART and MCNEAL that DR. PIERRE was wrongfully arrested and criminally charged.

44. The wrongful actions of Defendants SCHMIDT, SAFIY-STEWART and MCNEAL constitute false arrest, illegal detention, malicious prosecution, intentional infliction of emotional distress and unlawful search and seizure under the laws of the state of Florida and the United States Constitution.

45. Defendant LAMBERTI knew or should have known of MCNEAL'S history of dishonesty.

46. Despite having knowledge of MCNEAL'S history of dishonesty, and despite obtaining evidence that MCNEAL lied and fabricated evidence in this case, Defendant LAMBERTI did not investigate or discipline MCNEAL. Rather, LAMBERTI rewarded

MCNEAL with an "exceeds expectations" performance evaluation for her "work performance" and her "initiative" during the time period covered by DR. PIERRE'S illegal arrest and MCNEAL'S false affidavit.

47.     Even after the Broward State Attorney's Office filed a report indicating that MCNEAL'S affidavit did not comport with the evidence, LAMBERTI continued in his failure to investigate or discipline MCNEAL.

48.     Because the video evidence and eyewitness accounts demonstrated that DR. PIERRE did not display his weapon in a rude, careless, angry or threatening manner, the Reckless Display of Weapon in violation of Florida Statute 790.10 was dropped (i.e., Nolle Prosequi) on or about June 10, 2011.

49.     However based upon the false affidavit given by MCNEAL, the State continued to pursue the charge of Open Carrying of Weapon in violation of Florida Statute 790.053 despite the fact that video evidence, the statement of law enforcement officer, Sergeant Fedy Pierre, and the statements of lay witnesses proving that DR. PIERRE did not leave his lawn and therefore was in lawful possession of his shotgun.

50.     On or about June 20, 2011, the State finally dropped the Open Carrying of Weapon charge.

### DR. PIERRE'S DAMAGES

51.     Unfortunately, the damage to DR. PIERRE'S health, reputation and business operations already had been done. As a result of the illegal arrest, DR. PIERRE suffered special damages.

52.     Specifically, DR. PIERRE was barred by the United States Secret Service from attending a previously scheduled follow-up meeting with President Obama on June 13, 2011 to advocate for Haiti's medical education project in the post-earthquake Haiti reconstruction initiative.  DR. PIERRE had been admitted to prior meetings with the President as recently as March 2011, one month before the illegal arrest occurred.

53.     DR. PIERRE also was denied clearance to meet with various congressional leaders and their staffs as well as the staff of the United States Department of Health and Human Services where he was scheduled to seek support for projects for the Center for Haitian Studies Community Health Center.

54.     While he was incarcerated on April 4, 2011, DR. PIERRE missed a meeting and deadline to renew an agreement with the Miami Jewish Home and Hospital for his company's then-existing contract to develop clerkships for the American University of Antigua Kasturba Medical College, for which his company was being paid between $300,000.00 and $400,000.00 annually.  The contract was subsequently cancelled by Miami Jewish Home and Hospital.

55.     DR. PIERRE was initially denied a mortgage to purchase a new home outside of the community where the illegal arrest took place.  A reason given by the financial institution in the denial letter was DR. PIERRE'S "recent arrest."

56.     For the safety and peace of mind of himself and his family, DR. PIERRE subsequently relocated his family to Miami-Dade County, Florida at great financial expense.

57.     Even after the charges were dropped against DR. PIERRE, CITY OF MIRAMAR when contacted by the Secret Service failed to provide the Secret Service with information about the disposition of the case against DR. PIERRE which resulted in DR. PIERRE being barred

from attending a dinner event with First Lady Michelle Obama on October 27, 2011.  The banishment from social, economic and political events caused DR. PIERRE and his family great embarrassment and harm to his standing within the community.

58.     Since being barred by the Secret Service, DR. PIERRE withdraws from political and community events in fear of being ejected.  DR. PIERRE even ceased work on a project to secure funding from Miami-Dade County on behalf of the nonprofit Center for Haitian Studies ("Center") to purchase the building from which the Center provides free health services to the community.

59.     Since the illegal arrest, prospective medical students and business partners have "googled" the arrest and DR. PIERRE's revenue from the Greater Miami Health Education and Training Center has declined precipitously.

60.     As a result of the illegal arrest, DR. PIERRE, a borderline diabetic and hyper-intensive individual, was taken to jail where he experienced a sudden, dangerously high spike in blood sugar level to 509 and a corresponding spike in blood pressure to 160/116 resulting in his being taken to Broward General Hospital where he received treatment and was discharged to jail. Upon his return to jail his blood sugar and blood pressure spiked again, but no further treatment was administered until he was released on bail on April 4, 2011.

61.     Since his illegal arrest, DR. PIERRE's blood sugar and blood pressure are increasingly difficult to stabilize; he has developed chronic insomnia, nightmares, and crying spells.  He was referred to a psychologist whom he visits once each week, has experienced significant pain in his left shoulder due to being handcuffed several times, experiences numbness in his fingers for which his primary care physician referred him to an orthopedist, and has been

prescribed anti-inflammatory drugs for pain which interferes with his ability to play tennis and engage in other exercise which would benefit his health.

### COUNT I:  FALSE ARREST AND FALSE IMPRISONMENT

Plaintiff DR. PIERRE re-alleges paragraphs 1-12, 15, and 17-61 and further states that the Defendants CITY OF MIRAMAR, DUNN, SCHMIDT, SAFIY-STEWART did the following:

62.    On or about April 3, 2011, Defendants, acting in the course and scope of their duties as police officers employed by the CITY OF MIRAMAR arrested DR. PIERRE.

63.    Defendants caused DR. PIERRE to be deprived of his freedom and liberty. Each of the Defendant's acts was done for the purpose of imposing a confinement of DR. PIERRE, or with knowledge that such confinement would, to a substantial certainty, result from it, which occurred at the scene of the arrest, and continued on to the jail.

64.    DR. PIERRE did not consent to the aforementioned activities of Defendants and said actions were against the will of DR. PIERRE.

65.    The restraint of DR. PIERRE by Defendants was unlawful and unreasonable in that it was not based on lawfully issued process of Court, and Defendants did not have a valid warrant for the arrest of DR. PIERRE or the search and seizure of his property.

66.    Defendants proximately caused DR. PIERRE's arrest without probable cause as a matter of law because the misdemeanors charged did not occur in the presence of a law enforcement officer.

67.    As a proximate and direct result of the foregoing acts, DR. PIERRE has suffered grievously, has been brought into public scandal with great humiliation and damage to his

reputation and has suffered deprivation of his liberty and freedom, severe mental and emotional suffering arising from fear of incarceration and the humiliation, shame, embarrassment, and disgrace from detention, interrogation, arrest, booking, fingerprinting, and search of his body, bodily injury resulting in physical pain and suffering and diminished health, mental pain and suffering, loss of the capacity for the enjoyment of life, the expense of medical care and treatment, loss of earnings, and diminution and loss of the ability to earn money which are either permanent or continuing to this day and are likely to continue into the future.

WHEREFORE, Plaintiff DR. PIERRE demands judgment for damages against Defendants, CITY OF MIRAMAR, DUNN, SCHMIDT, and SAFIY-STEWART for compensatory damages, special damages, and costs of this action, and demands trial by jury on all issues so triable.

## COUNT II: MALICIOUS PROSECUTION

Plaintiff DR. PIERRE re-alleges paragraphs 1-12, 15, and 17-67 and further states that the Defendants CITY OF MIRAMAR, DUNN, SCHMIDT, MCNEAL and SAFIY-STEWART did the following:

68.	On or about April 3, 2011, Defendants arrested DR. PIERRE for Reckless Display of Weapon in violation of Florida Statute 790.10 and Open Carrying of Weapon in violation of Florida Statute 790.053, both misdemeanors.

69.	After arresting DR. PIERRE, Defendants CITY OF MIRAMAR, SCHMIDT, DUNN, and SAFIY-STEWART, acting in concert with Defendant MCNEAL, caused a judicial proceeding to be commenced against DR. PIERRE by the Broward State Attorney's Office which filed charges.

70.    Said judicial proceeding was instituted by Defendants without probable cause as DR. PIERRE did not possess a firearm in the officers' presence nor did he commit a crime in the officers' presence.  A misdemeanor may be charged only if the crime was committed in the presence of the officer.  The facts observed by Defendants prior to arresting DR. PIERRE, and the matters known to them before institution of the aforementioned judicial proceeding, would not have warranted a reasonable person to believe that any criminal offense had been committed by DR. PIERRE.

71.    There was an absence of probable cause for the original proceedings against DR. PIERRE.

72.    Defendants acted with malice in instituting the foregoing judicial proceeding which is implied by the lack of probable cause, lack of investigation, refusal to review the surveillance video, refusal to take the statement of Sergeant Fedy Pierre, the only law enforcement officer who had witnessed the incident, and/or with express malice as shown by their reckless disregard of the Plaintiff's rights and their personal animosity and hostility towards DR. PIERRE.

73.    No arrest would have taken place and no charges would have been filed but for the actions of Defendants.

74.    The termination, of the original proceedings constituted a bona fide termination of those proceedings in favor of DR. PIERRE which resulted in a disposition of Nolle Prosequi which was not bargained for by Plaintiff.

75.     The facts of Plaintiff's prosecution became known to many persons both known and unknown to Plaintiff as a result of being made part of the public records of Broward County, Florida and appearing on court documents available to public scrutiny.

76.     As a proximate and direct result of the actions of Defendants, DR. PIERRE sustained damages as a result of having been brought into public scandal with great humiliation and damage to his reputation and having been deprived of his liberty and freedom.  DR. PIERRE suffered severe mental and emotional distress arising from fear of incarceration and the humiliation, shame, embarrassment, and disgrace from detention, interrogation, arrest, booking, fingerprinting, and search of his body, bodily injury resulting in physical pain and suffering and diminished health, mental pain and suffering, loss of the capacity for the enjoyment of life, the expense of medical care and treatment, loss of earnings, and diminution and loss of the ability to earn money which are either permanent or continuing to this day and are likely to continue into the future, and he incurred attorney's fees and court costs.

WHEREFORE, Plaintiff DR. PIERRE demands judgment for damages against Defendants CITY OF MIRAMAR, DUNN, SCHMIDT, MCNEAL and SAFIY-STEWART for compensatory damages, special damages and costs of this action and demands trial by jury on all issues so triable.

### COUNT III: NEGLIGENT HIRING OR RETENTION

Plaintiff DR. PIERRE re-alleges paragraphs 1-12. 15, and 17-76 and further states that Defendant CITY OF MIRAMAR did the following:

77.	Defendant CITY OF MIRAMAR negligently knew or should have known that Defendants SCHMIDT and SAFIY-STEWART were dangerous and incompetent and liable to do harm to citizens or residents of Broward County, Florida.

78.	Defendant CITY OF MIRAMAR failed to conduct a reasonable investigation regarding the competence of SCHMIDT and SAFIY-STEWART to be employed as police officers for the City of Miramar Police Department.

79.	Defendant CITY OF MIRAMAR, during the course of employment of said officers became aware or should have become aware of problems with SCHMIDT and SAFIY-STEWART that indicated their unfitness and/or predisposition to committing a wrong, but failed to take further action such as investigating, discharging or reassignment.

80.	Defendant CITY OF MIRAMAR owed DR. PIERRE, as well as all residents of Broward County, a duty of care to hire and retain only competent law enforcement officers.

81.	Defendant, CITY OF MIRAMAR, breached its duty of care to DR. PIERRE by hiring and retaining incompetent officers such as SCHMIDT and SAFIY-STEWART.

82.	As a proximate and direct result of the negligence of CITY OF MIRAMAR, DR. PIERRE suffered severe mental and emotional distress arising from fear of incarceration and the humiliation, shame, embarrassment, and disgrace from detention, interrogation, arrest, booking, fingerprinting, and search of his body, bodily injury resulting in physical pain and suffering and diminished health, mental pain and suffering, loss of the capacity for the enjoyment of life, the expense of medical care and treatment, loss of earnings, and diminution and loss of the ability to earn money which are either permanent or continuing to this day and are likely to continue into the future.

WHEREFORE, Plaintiff DR. PIERRE demands judgment for damages and court costs against CITY OF MIRAMAR, and requests trial by jury on all issues so triable.

## COUNT IV: NEGLIGENT FAILURE TO TRAIN AND SUPERVISE

Plaintiff DR. PIERRE re-alleges paragraphs 1-12, 15, and 17-82 and further states that defendant CITY OF MIRAMAR did the following:

83.     Defendant CITY OF MIRAMAR owed the public, including Plaintiff, a duty to properly train and supervise its personnel regarding the improper use of authority and the appropriate procedures to follow when making an arrest for an alleged violation and proper use of force in making a lawful arrest.

84.     Defendant CITY OF MIRAMAR, breached its duty of care to Plaintiff by failing to provide each of the Defendant's officers with proper and special training and/or supervision so that he could be prepared to execute the duties the CITY OF MIRAMAR reasonably could expect him to perform during the course and scope of his employment.

85.     As a proximate result of lack of training and supervision, Defendant's officers arrested, detained, falsely imprisoned, humiliated, embarrassed and caused severe emotional distress; physical injuries; and permanent scarring to a totally innocent person.

86.     As a proximate result of such conduct, DR. PIERRE sustained damages, including mental pain and suffering which continue to this day and are likely to continue into the future.

WHEREFORE, DR. PIERRE demands judgment for compensatory damages and court costs against CITY OF MIRAMAR, and demands trial by jury on all issues so triable.

## COUNT V: NEGLIGENT HIRING OR RETENTION

Plaintiff DR. PIERRE re-alleges paragraphs 1-8, 13-14, and 16-61 and further states that Defendant LAMBERTI did the following:

87. Defendant LAMBERTI, negligently knew or should have known that Defendant MCNEAL was untruthful and incompetent and liable to do harm to citizens or residents of Broward County, Florida.

88. Defendant LAMBERTI failed to conduct a reasonable investigation regarding the competence of MCNEAL to be employed and/or retained as a detention officer for the Broward County Sheriff's Office.

89. Defendant LAMBERTI during the course of employment of MCNEAL became aware or should have become aware of problems with MCNEAL that indicated her unfitness and/or predisposition to committing a wrong, but failed to take further action such as investigating, discharging or reassignment.

90. Defendant LAMBERTI owed DR. PIERRE, as well as all residents of Broward County, a duty of care to hire and retain only competent officers.

91. Defendant LAMBERTI breached its duty of care to DR. PIERRE by hiring and retaining incompetent and dishonest officers such as MCNEAL.

92. As a proximate and direct result of the negligence of LAMBERTI, DR. PIERRE suffered severe mental and emotional distress arising from fear of incarceration and the humiliation, shame, embarrassment, and disgrace from detention, interrogation, arrest, booking, fingerprinting, and search of his body, bodily injury resulting in physical pain and suffering and diminished health, mental pain and suffering, loss of the capacity for the enjoyment of life, the expense of medical care and treatment, loss of earnings, and diminution and loss of the ability to

earn money which are either permanent or continuing to this day and are likely to continue into the future.

WHEREFORE, Plaintiff DR. PIERRE demands judgment for damages and court costs against LAMBERTI, and requests trial by jury on all issues so triable.

### COUNT VI: NEGLIGENT FAILURE TO TRAIN AND SUPERVISE

Plaintiff DR. PIERRE re-alleges paragraphs 1-8, 13-14, 16-61 and 87-92 and further states that defendant LAMBERTI did the following:

93.     Defendant LAMBERTI owed the public, including Plaintiff, a duty to properly train and supervise its personnel regarding the improper use of authority for an off-duty corrections officer and the appropriate procedures to follow when making a sworn statement as a fellow officer.

94.     Defendant LAMBERTI breached its duty of care to Plaintiff by failing to provide MCNEAL with proper and special training and/or supervision so that she could be prepared to execute the duties the Broward Sheriff's Office reasonably could expect her to perform during the course and scope of her employment.

95.     As a proximate result of lack of training and supervision, MCNEAL interfered in an official investigation and provided a false statement leading to the arrest, detention, false imprisonment, humiliation, embarrassment and severe emotional distress; physical injuries; and permanent scarring of a totally innocent person.

96.     As a proximate result of such conduct, DR. PIERRE sustained damages, including mental pain and suffering which continue to this day and are likely to continue into the future.

WHEREFORE, DR. PIERRE demands judgment for compensatory damages and court costs against Defendant LAMBERTI, and demands trial by jury on all issues so triable.

## COUNT VII: FALSE ARREST/FALSE IMPRISONMENT CLAIM DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. SECTIONS 1983 AND 1988

Plaintiff DR. PIERRE re-alleges paragraphs 1-8, 10-11, 15, and 19-76 and further states that the Defendants SCHMIDT and SAFIY-STEWART did the following:

97.     While Defendants SCHMIDT and SAFIY-STEWART were acting under color of state and federal law as law enforcement officers for the CITY OF MIRAMAR, they subjected the Plaintiff to the deprivation of rights and privileges secured to him under the Fourth and Fourteenth Amendments to the United States Constitution.

98.     The actions and conduct of Defendants SCHMIDT and SAFIY-STEWART violated the rights of Plaintiff to be free from unreasonable detention, search and seizure under the Fourth Amendment to the United States Constitution.

99.     Defendants SCHMIDT and SAFIY-STEWART deprived DR. PIERRE of his constitutional rights in a way that they fully understood, or should have understood, that their actions were wrongful and in violation of the law. SCHMIDT and SAFIY-STEWART by direct or indirect procurement, personally caused Plaintiffs' arrest in the absence of probable cause that Plaintiff committed any criminal offense.

100.     The conduct of Defendants SCHMIDT and SAFIY-STEWART towards DR. PIERRE was objectively unreasonable and violated Plaintiffs' clearly established rights under the Fourth and Fourteenth Amendments to be free from arrest in the absence of probable cause.

101.    As a result of the false arrest, DR. PIERRE was deprived of his civil rights as guaranteed by the Fourth Amendment of the Constitution, suffered humiliation, degradation, apprehension for his bodily security, and other mental and emotional harms, which continue to this day and are likely to continue into the future.

102.    42 U.S.C. § 1983 provides a remedy for violation of these rights.

103.    DR. PIERRE is entitled to attorney's fees expended in this litigation pursuant to 42 United States Code Section 1988.

WHEREFORE, Plaintiff DR. PIERRE demands judgment for compensatory and punitive damages against the Defendants SCHMIDT and SAFIY-STEWART, and in addition thereto, demands the award of attorney's fees and court costs pursuant to 42 U.S.C. Sections 1983 and 1988 and demand a trial by jury on all issues so triable.

## COUNT VIII: DEPRIVATION OF CIVIL RIGHTS BY FALSE ARREST/ FALSE IMPRISONMENT AND EXCESSIVE USE OF FORCE IN VIOLATION OF 42 U.S.C. SECTION 1983

Plaintiff DR. PIERRE re-alleges paragraphs 1-12, 15, 17-86 and 97-103 and further states that defendant CITY OF MIRAMAR did the following:

104.    The Defendant officers have at all times material hereto had a propensity for which the CITY OF MIRAMAR knew or should have known and perpetrated unlawful acts under the circumstances against DR. PIERRE as police officers while working at the CITY OF MIRAMAR. Despite these officers' propensity and the CITY OF MIRAMAR knowledge of this propensity, the CITY OF MIRAMAR and DUNN has done nothing to deter this behavior.

105.    CITY OF MIRAMAR and its officers' treatment of DR. PIERRE constitutes a pattern of behavior by the CITY OF MIRAMAR which rises to the level of or implies

conclusively the existence of a policy of allowing and passively encouraging, authorizing or ratifying this behavior.

106. Defendant, as a matter of policy and practice have with deliberate indifference failed to adequately discipline, train or otherwise direct police officers concerning the rights of citizens thereby causing the Defendant's officers to engage in the unlawful conduct described above.

107. Defendant, as a matter of policy and practice has with deliberate indifference failed to properly sanction or discipline its police officers including those officers involved in this case for violations of the constitutional rights of citizens thereby causing police, including those involved in this case, to engage in unlawful conduct.

108. These patterns and implied or explicit policies have been ratified by the highest decision maker of the CITY OF MIRAMAR'S government leadership including the police, the chief, the mayor, city commissioners and/or high officials within the police department itself or other departments.

109. This pattern and resultant policy acted to directly deprive Plaintiffs DR. PIERRE of his civil rights as guaranteed to them by the United States Constitution.

110. In being deprived of his civil rights, DR. PIERRE was injured as described above. In addition, DR. PIERRE was deprived of his civil liberty and right to be free from such abuse at the hands of the government.

111. The CITY OF MIRAMAR in all of its actions described in the complaint and more specifically in this count deprived DR. PIERRE of his constitutional rights under color of state law.

WHEREFORE, DR. PIERRE demands judgment and compensatory and punitive damages against the Defendant CITY OF MIRAMAR, and in addition demands attorney's fees and costs pursuant to 42 U.S.C. Sections 1983 and 1988 and demands trial by jury on all issues so triable.

## COUNT IX: EXCESSIVE FORCE CLAIM COGNIZABLE UNDER 42 U.S.C. SECTION 1983

Plaintiff DR. PIERRE re-alleges paragraphs 1-8, 10-11, 15, 19-76 and 97-103 and further states that Defendants SCHMIDT and SAFIY-STEWART, did the following:

112.    The force used by Defendants SCHMIDT and SAFIY-STEWART was unreasonable and unnecessary for the said officers to defend themselves or any other person from bodily harm during the unlawful arrest of DR. PIERRE.

113.    The force used by the SCHMIDT and SAFIY-STEWART was objectively unreasonable and constituted excessive use of force in violation of Plaintiffs' clearly established constitutional rights under the Fourth and Fourteenth Amendments and 42 U.S.C. Section 1983.

114.    As a direct and proximate result of the acts described above in violation of 42 U.S.C. Section 1983, DR. PIERRE has suffered grievously and have been brought into public scandal and with great humiliation, mental suffering and damaged reputation which continues to this day and is likely to continue into the future.

115.    As a further and proximate result of the conduct of SCHMIDT and SAFIY-STEWART, DR. PIERRE suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, expense of hospitalization and medical care and treatment. The losses are either permanent or continuing

and DR. PIERRE will suffer losses into the future in violation of DR. PIERRE's clearly established rights. DR. PIERRE also has agreed to pay the undersigned a reasonable fee for his services.

WHEREFORE, Plaintiffs DR. PIERRE demands compensatory and punitive damages against SCHMIDT and SAFIY-STEWART, and in addition thereto, demands attorney's fees and court costs pursuant to 42 U.S.C. Section 1988 and requests trial by jury on all issues so triable.

## COUNT X: 42 U.S.C. SECTION 1983 CLAIM AGAINST DEFENDANT MCNEAL

Plaintiff DR. PIERRE re-alleges paragraphs 1-8, 14, 16, 18-61, and 68-76 and further states that the Defendant MCNEAL did the following:

116.    While Defendants MCNEAL was acting under color of state and federal law as a correction officer for the Broward County Sheriff's Office/Defendant LAMBERTI, she subjected the Plaintiff to the deprivation of rights and privileges secured to him under the Fourth and Fourteenth Amendments to the United States Constitution.

117.    The actions and conduct of Defendant MCNEAL violated the rights of Plaintiff to be free from unreasonable detention, search and seizure under the Fourth Amendment to the United States Constitution.

118.    Defendant MCNEAL fabricated evidence and either failed to disclose to Defendants CITY OF MIRAMAR, SCHMIDT and SAFIY-STEWART that she was not a law enforcement officer or falsely claimed that she was a law enforcement officer causing the prosecution to be continued against DR. PIERRE when she knew or should have known that said prosecution was without probable cause.  The matters known to her prior to and at the time that

she continued the prosecution would not have warranted a reasonable law enforcement officer to believe the Plaintiff had committed any criminal offense.

119.    Defendant MCNEAL acted under color of state law and with malice in aiding and abetting the commencement and continuation of the prosecution.  Said prosecution was only able to be commenced and continued as a result of her intentional acts providing false information and a false affidavit to law enforcement officers in order to manufacture probable cause to support the illegal arrest of DR. PIERRE and the illegal search and seizure of his property.

120.    As a direct and proximate result of the acts described above, DR. PIERRE was deprived of his civil rights as guaranteed by the Fourth Amendment of the Constitution, suffered humiliation, degradation, apprehension for his bodily security, and other mental and emotional harms, which continue to this day and are likely to continue into the future.

121.    42 U.S.C. § 1983 provides a remedy for violation of these rights.

122.    DR. PIERRE is entitled to attorney's fees expended in this litigation pursuant to 42 United States Code Section 1988.

WHEREFORE, Plaintiff DR. PIERRE demands judgment for compensatory and punitive damages against the Defendant MCNEAL, and in addition thereto, demands the award of attorney's fees and court costs pursuant to 42 U.S.C. Sections 1983 and 1988 and demand a trial by jury on all issues so triable.

### COUNT XI: 42 U.S.C. § 1983 CLAIM AGAINST DEFENDANT LAMBERTI

Plaintiff DR. PIERRE re-alleges paragraphs 1-8, 13-14, 16-61, 68-76, 87-92 and 116-122 and further states that defendant LAMBERTI did the following:

123.    At all times material hereto, Defendant LAMBERTI was responsible for adopting and implementing the rules and regulations in regard to hiring, screening, training, supervising, controlling, disciplining and assigning deputies and/or employees to their duties within the Broward County Sheriff's Office.

124.    Defendant LAMBERTI was deliberately indifferent to his duties in that he expressly or impliedly acknowledged and assented to the failure to train, supervise, control or otherwise screen employees of the Broward County Sheriff's Office, including, but not limited to, Defendant MCNEAL, for dangerous propensities, dishonesty, lack of training and/or skill or other characteristics making said officers and employees unfit to perform their duties.

125.    Defendant LAMBERTI knew or should have known of the history of widespread abuses existing with respect to the hiring and/or training and/or supervision within the Broward County Sheriff's Office.

126.    The conduct of Defendant LAMBERTI in his failure to properly screen, select, train, supervise and/or discipline his deputy sheriffs and/or agents and/or employees, was deliberately indifferent to the constitutional rights of all persons, including DR. PIERRE.

127.    Defendant LAMBERTI abdicated his policymaking and oversight responsibilities, thereby allowing the deputy sheriffs and/or agents and/or employees, including MCNEAL, a corrections officer, to ignore the requirements of law and the policies of the Broward County Sheriff's Office.

128.    The above acts and omissions of Defendant LAMBERTI constitute a course of conduct and failure to act amounting to deliberate indifference to the rights, health, safety and

welfare of the Plaintiff DR. PIERRE and those similarly situated, resulting in the deprivation of DR. PIERRE'S constitutional rights under state and federal law.

129.    As a direct and proximate cause of the acts described above, DR. PIERRE has suffered severe physical, mental and emotional injuries, and loss of enjoyment of life as heretofore alleged.

130.    42 U.S.C. § 1983 provides a remedy for violation of these rights.

131.    DR. PIERRE is entitled to attorney's fees expended in this litigation pursuant to 42 U.S.C. Section 1988.

WHEREFORE, DR. PIERRE demands judgment and compensatory and punitive damages against the Defendant LAMBERTI, and in addition demands attorney's fees and costs pursuant to 42 U.S.C. Sections 1983 and 1988 and demands trial by jury on all issues so triable.

## COUNT XII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT SCHMIDT

Plaintiff DR. PIERRE re-alleges paragraphs 1-8, 10, 15, 17-76, 97-103 and 112-115 and further states that the Defendant SCHMIDT did the following:

132.    Defendant SCHMIDT's conduct was extreme and outrageous, and was intentional and/or done recklessly.

133.    The above-described acts were beyond the bounds of human decency, let alone the confines of the law, and were virtually certain to and did in fact result in emotional distress to Plaintiff DR. PIERRE.

134.    As the proximate and direct result of the extreme and outrageous conduct of Defendant SCHMIDT, Plaintiff DR. PIERRE has suffered severe mental and emotional distress

arising from fear of incarceration and the humiliation, shame, embarrassment, and disgrace from detention, interrogation, arrest, booking, fingerprinting, and search of his body, bodily injury resulting in physical pain and suffering and diminished health, mental pain and suffering, loss of the capacity for the enjoyment of life, the expense of medical care and treatment, loss of earnings, and diminution and loss of the ability to earn money which are either permanent or continuing to this day and are likely to continue into the future.

135.    But for the extreme and outrageous conduct of Defendant SCHMIDT the severe emotional distress would not have occurred.

WHEREFORE, Plaintiffs demand judgment against Defendant SCHMIDT for compensatory punitive damages and costs of this action and demands trial by jury of all issues so triable.

## COUNT XIII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT MCNEAL

Plaintiff DR. PIERRE re-alleges paragraphs 1-8, 14, 16, 18-61, and 68-76 and 116-122 and further states that the Defendant MCNEAL did the following:

136.    Defendant MCNEAL'S conduct was extreme and outrageous, and was intentional and/or done recklessly.

137.    The above-described acts were beyond the bounds of human decency, let alone the confines of the law, and were virtually certain to and did in fact result in emotional distress to Plaintiff DR. PIERRE.

138.    As the proximate and direct result of the extreme and outrageous conduct of Defendant MCNEAL, Plaintiff DR. PIERRE has suffered severe mental and emotional distress

arising from fear of incarceration and the humiliation, shame, embarrassment, and disgrace from detention, interrogation, arrest, booking, fingerprinting, and search of his body, bodily injury resulting in physical pain and suffering and diminished health, mental pain and suffering, loss of the capacity for the enjoyment of life, the expense of medical care and treatment, loss of earnings, and diminution and loss of the ability to earn money which are either permanent or continuing to this day and are likely to continue into the future.

139. But for the extreme and outrageous conduct of Defendant MCNEAL the severe emotional distress would not have occurred.

140. At all times relevant hereto, Defendant MCNEAL was acting outside the scope of her authority, and in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, rendering her individually liable.

WHEREFORE, Plaintiffs demand judgment against Defendant MCNEAL for compensatory punitive damages and costs of this action and demands trial by jury of all issues so triable.

## COUNT XIV: BATTERY

Plaintiff DR. PIERRE re-alleges paragraphs 1-9, 12, 17-49, 60-67 and further states that defendants CITY OF MIRAMAR and DUNN did the following:

141. On April 3, 2011, employees of the City of Miramar Police Department, acting in the course and scope of their employment, did batter and touch DR. PIERRE without the consent of DR. PIERRE and against his will.

142. As a result of the actions of the Defendants CITY OF MIRAMAR and DUNN, DR. PIERRE suffered damages which include physical suffering, physical inconvenience,

physical discomfort; aggravation of an existing medical condition; expense of medical care and treatment, loss of time, mental suffering, embarrassment, humiliation, disgrace, and injury to their feelings and reputation, the emotional damage and reputation damage are continuing to this day and are likely to continue in the future.

WHEREFORE, DR. PIERRE demands judgment against CITY OF MIRAMAR and DUNN for compensatory damages and costs of this action and demands trial by jury of all issues so triable.

## JURY DEMAND

WHEREFORE, PLAINTIFF, LAURINUS PIERRE, M.D., M.P.H. demands a trial by jury, and judgment against the Defendants, CITY OF MIRAMAR, FLORIDA, INC., GEORGE SCHMIDT and J.L. SAFIY-STEWART, individually and in their official capacities as police officers for the City of Miramar; KEITH DUNN, in his official capacity as the Chief of Police for the City of Miramar Police Department; AL LAMBERTI, in his official capacity as the Sheriff of Broward County; ANGELA MCNEAL individually and in her official capacity as a deputy sheriff- Corrections for the Broward County Sheriff's Office for compensatory and punitive damages, special damages, damages for past, present, and future medical expenses, pain and suffering, and impairment of future earning capacity, together with the costs of this suit and such other relief as the court may deem just and proper.

Respectfully submitted,

**JONES MCGHEE, PLLC**

/s/ Shavon L. Jones

SHAVON L. JONES (FBN: 636827)
Email: SLJ@jonesmcghee.com
KIONNE L. MCGHEE (FBN: 856061)
Email: KLM@jonesmcghee.com
4770 Biscayne Blvd., Suite 1110
Miami, Florida 33137
Telephone: (305) 573-8808


**ABRAHAM A. GALBUT, P.A.**

/s/ Abraham A. Galbut

_____
ABRAHAM A. GALBUT (FBN: 210889)
4770 Biscayne Blvd., Suite 1400
Miami, Florida 33137
Telephone: (786) 245-2302
Email: agalbut@hudcap.com


**LAW OFFICES OF LARRY HANDFIELD**

/s/ Larry R. Handfield

_____
LARRY R. HANDFIELD (FBN: 330590)
4770 Biscayne Blvd., Suite 1250
Miami, Florida 33137
Telephone: (305) 576-1011
Email: lhandf2802@aol.com


**MIKE JOSEPH, P.A.**

/s/ Michael Joseph

_____
MIKE JOSEPH (FBN: 086776)
4770 Biscayne Blvd., Suite 640
Miami, Florida 33137
Telephone: (305) 672-3100
Email: michaelljosephpa@gmail.com

ATTORNEYS FOR PLAINTIFFS